(No. 33440.—

Carl Schmitt *et al.*, Appellees, *vs.* Altha B. Heinz, Appellant.

*Opinion filed March 24, 1955.*

LEITER & DURFEE, of Peoria, for appellant.

MORGAN, PENDARVIS & MORGAN, of Peoria, for appellees.

Per CURIAM: A decree of the circuit court of Peoria County ordered the reformation of a deed and the reformation and specific performance of two contracts for deed. From this decree, the defendant, Atha B. Heinz, prosecutes a direct appeal, a freehold being necessarily involved.

Three contiguous parcels of rural real estate, consisting of approximately one acre each, are involved. A public road forms the eastern boundary of each tract of land. Plaintiffs are the six owners and contract purchasers of the parcels, and the mortgagee of one of them. Virgil E. and Leona J. Whetstone are the contract purchasers of the northernmost tract, Carl and Reaka Schmitt are the owners of the middle tract, and Fred and Anna Fisher are the contract purchasers of the southernmost tract. In 1939, the defendant, Mrs. Heinz and her then husband, John A. McLaughlan, owned approximately 27.32 acres of land in Peoria County lying west of the center line of a public road known as State Aid Route No. 18, excepting therefrom certain coal and mineral rights underlying the land. In that year the plaintiffs Schmitt occupied the dwelling house on the land as tenants of defendant and her husband. The Schmitts testified that in July or August of 1939, they had conversations with defendant concerning the purchase of an acre of land for $200, payable·at the rate of $10 down and $1 per week until the sum of $100 had been paid, at which time they were to receive a contract for deed, and, upon the payment of the balance of $100, they were to receive a warranty deed. These plaintiffs testified, further, that they inquired of defendant as to the size of an acre and were informed by her that 120 feet by 365 feet would make one acre. On this point, defendant testified that she agreed to sell the Schmitts not an acre, but only a tract 120 feet along the road by 365 feet deep because lots in the neighboring village of Kickapoo, 60 feet wide, were selling for $100 each and that she arrived at the sale price in this manner. The site of the land to be purchased

by the Schmitts was selected as that portion lying immediately north of a line fence on the land which intersected the right-of-way line of the public road at an angle of 56° 43'. The Schmitts immediately paid the down payment and, after the crops were cleared from the land, defendant and her husband assisted them in digging their basement. When the basement was completed in September of 1939, the Schmitts moved from the farm house into the basement.

The following month, McLaughlan and Schmitt started to measure off the property in order to erect fences. In so doing they encountered difficulty in attempting to determine the size of an acre since the line fence, which was the south line of the property, intersected the road at an angle. They then solicited the aid of Willis Felton, a former school teacher. Under his guidance a north line was established by measuring at right angle from the fence a distance of 120 feet. The north line was then extended to the road and measurements were made westerly from the road along the north and south lines a distance of 365 feet in order to establish the depth. At this juncture, defendant arrived on the scene and protested the amount of frontage being taken but said she did not care about the back. The frontage was shortened by some ten feet and an area was then fenced having a frontage of 128 feet, a south line of 352.6 feet, a west line of 139.4 feet and a north line of 360.5 feet. The premises have been occupied by the plaintiffs Schmitt from that time until this action was instituted on October 2, 1952.

Subsequently, on August 8, 1940, the Schmitts, the defendant and her husband executed an agreement for the purchase of premises described as having a frontage of 120 feet on the road and a depth of 365 feet with the north and south lines meeting the westerly line of the road at an angle of 56° 43'. Thereafter, on June 3, 1942, the balance of the purchase price having been paid in full, defendant and her husband executed a warranty deed

conveying to the Schmitts property as described in the agreement.

In December of 1948, defendant obtained a divorce from her husband and resumed her former name of Atha B. Heinz. As a part of a property settlement, she obtained title to the 27.32 acres, subject to outstanding coal and mineral rights and the rights of the plaintiffs Schmitt.

On October 1, 1951, the plaintiffs Whetstone signed an agreement with defendant for the installment purchase of a parcel of land lying north of the Schmitt tract. This tract was also described by metes and bounds, with a frontage of 130 feet along the road and the north line of the Schmitt tract being its southern boundary. Included in this purchase was a house located on defendant's property which was to be moved onto the premises being purchased. There is no dispute concerning the dimensions of the Whetstone land. In this instance, the agreement was signed before delivery of possession, and, at the time of the proceedings in the trial court, the Whetstones were still making monthly payments in accordance with the terms of the contract so that the agreement remained unperformed insofar as final payment and delivery of deed were concerned.

Finally, in May, 1952, the plaintiffs Fisher contacted defendant for the purpose of purchasing an acre of ground upon which to build a residence. They were shown the property immediately south of the Schmitt tract. Their testimony is to the effect that defendant advised them 130 feet frontage by 350 feet depth would make an acre, and that they accepted her statement as true. The Fishers orally agreed to take the land, whereupon they made a down payment and, shortly thereafter, moved into a trailer they had placed on the land as a temporary residence. On May 14, 1952, the Fishers signed a contract for the installment purchase of land described as having a frontage of 120 feet and a depth of 350 feet and adjoining the Schmitt tract on the south. The contract was read to them.

They did not receive a copy. The plaintiffs Fisher then purchased building blocks and fence posts and in June, 1952, employed a surveyor to locate their lot lines so that they might erect a fence. They informed the surveyor they were to have a one-acre tract with a frontage of 130 feet on the road. Defendant, however, furnished the surveyor with a copy of the contract describing the property as 120 feet by 350 feet. These dimensions, the surveyor testified, would yield considerably less than an acre. The Fisher tract was the only one of the properties in question which was unfenced at the time of the commencement of this action. The Fishers testified that they had made all monthly payments required of them prior to the time of the hearing, and that they were ready, willing and able to complete the payments due under the contract.

Subsequently, it was discovered by survey that the descriptions contained in the deed and the two contracts of purchase located the three properties in question approximately one space or tract north of where each was intended to be located. As part of this summary of the facts, it must be noted that a frontage of 120 feet on the public highway would produce a width of only 100.3 feet measured perpendicular to the north and south lot lines of the Fisher tract, and, further, that there existed a county zoning ordinance to the effect that no building shall be constructed within fifty feet of the lot lines.

The pleadings consist of a complaint, answer and reply. In addition to praying for the reformation of the three instruments in order that they might correctly describe the premises intended to have been included therein and for the specific performance of the Whetstone and Fisher contracts as reformed, the complaint also asked that defendant be ordered to sign a zoning variance waiver and consent for the plaintiffs Fisher and for money damages against the defendant on behalf of all plaintiffs. By her answer, defendant admitted that the descriptions contained

in the three instruments mistakenly located the properties in question, but she averred that the length and directions of the lines as described in the instruments should be controlling as to the quantity of land intended to be sold. She therefore prayed that reformation be granted accordingly. She also asked for reasonable compensation from the plaintiffs Schmitt and Fisher, should reformation be granted, for the frontage occupied by them, and for judgment against the Whetstones for $100, a sum representing one half the cost of moving the house onto the premises sold to them. The reply denied the various factual and affirmative allegations of the defendant.

The chancellor, confirming the master's report, adjudged the equities were with plaintiffs and ordered that the Schmitts reconvey to defendant the premises described in their warranty deed; that their mortgagee execute its release deed therefor; that defendant convey to the Schmitts her deed for the property as improved and occupied by them; that the Schmitts execute and deliver a new mortgage to the mortgagee; that the Whetstones pay to the defendant any balance remaining due on their contract for deed; that, thereafter, defendant convey to them the premises as improved and occupied by them; that the Fishers pay any balance remaining due on their contract for deed; that, thereafter, defendant convey to them premises described as having a frontage of 130 feet and distances along the north and south lines of 400.81 feet; that the defendant execute and deliver to the Fishers her written consent or waiver to a zoning variance; and that all costs be taxed against defendant.

Defendant contends that the circuit court erred (1) in finding that the parties had agreed on an acre of land as the quantity to be sold to the Schmitts and to the Fishers, (2) in ordering her to execute and deliver her written consent to a zoning variance in favor of the Fishers, and (3) in finding that the Whetstones were responsible for only

one half the cost of moving the house onto the Whetstone tract.

The law applicable to cases involving reformation for reasons of mistake is basic and well established. Since *Worden* v. *Williams,* 24 Ill. 67, this court has held that it is within the jurisdiction and is the duty of courts of equity to correct mistakes in conveyances by reformation. To reform an instrument upon the ground of mistake, the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by mistake, expressed another. Before a deed will be reformed, satisfactory evidence of mistake must be presented, leaving no reasonable doubt as to the mutual intention of the parties, a mere preponderance of the evidence being insufficient. (*David* v. *Schiltz,* 415 Ill. 545; *Spies* v. *De Mayo,* 396 Ill. 255; *Ambarann Corp.* v. *Old Ben Coal Corp.* 395 Ill. 154; *Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19; *Korosic* v. *Pearson,* 377 Ill. 413; *Tope* v. *Tope,* 370 Ill. 187.) In an action to reform a written instrument, parol evidence is admissible to show a mistake, and the Statute of Frauds is not applied in such cases to exclude oral testimony. *Darst* v. *Lang,* 367 Ill. 119; *Mercantile Ins. Co.* v. *Jaynes,* 87 Ill. 199.

As to the Schmitt controversy, the evidence discloses that defendant and her husband assisted the Schmitts in locating their house on the land, helped them in digging their basement, and defendant's husband was on hand to aid in erecting the fence. The fence as erected in October, 1939, has remained unchanged without protest until a mistake was discovered in 1952 in the description in the deed. During this entire period the Schmitts have exercised dominion over the land without objection on the part of defendant. While there is some dispute as to the quantity of land intended to be conveyed, we take cognizance of

the fact that there are 43,560 square feet in an acre and that a depth of 365 feet is the nearest multiple of five feet in length required to produce the necessary square feet for an acre when multiplied by a width of 120 feet. Defendant testified as to the manner in which she arrived at the price for the Schmitt property, but no explanation is made as to the manner in which she arrived at a depth of 365 feet. The only logical conclusion is that she was attempting to sell an acre of land. When measurements were made, however, to plot the acre on the north side of a fence which met the public road at an angle of 56° 43', it became apparent that a frontage of more than 120 feet was necessary to yield an acre. When a post was being set along the road to establish the north line, the Schmitts credit defendant with stating that she would rather have them take more land off the back than to take so much footage along the highway. This statement is in accord with her intention to sell the Schmitts one acre. At any rate, defendant's husband, who was one of the grantors, testified that the land as fenced was the land intended to be conveyed to the Schmitts, although he believed the frontage to be only 120 to 121½ feet. When all of these factors are taken into consideration, it appears to have been the clear intention of the parties that the Schmitts were buying, and in fact purchased, the land as fenced. The description contained in the deed reflected a mutual mistake of fact, and the deed was correctly reformed to give effect to the intention of the parties.

As to the Whetstones, defendant urges that the chancellor erred in failing to find that they were responsible for one half the cost ($100) of moving the house onto the land purchased by them. Both Whetstone and his wife and a third party testified that defendant orally agreed to pay one half of such cost. Defendant, on the other hand, testified that she offered to pay one half but that Whetstone declined saying he would pay his own bills. The rule is

well established that a master's findings of fact, when approved by the chancellor, as here, will not be disturbed unless manifestly against the weight of the evidence. *Staude* v. *Heinlein,* 414 Ill. 11.

In the Fisher controversy, the quantity of land being sold is again in dispute. The Fishers contend that the defendant offered to sell them an acre of land with a frontage along the road of 130 feet and that defendant advised them that such frontage with a depth of 350 feet would produce an acre. To substantiate their contention they testified that when the land was shown to them defendant measured off 130 feet, and also, when she read the contract for deed to them, she read the figure 130. Defendant testified that she measured off a distance of 120 feet along the road and tied a rag on the fence and that when she read the contract for deed to them she read it as written, and that she had since then made no alterations thereon. Although there is disagreement between the parties as to the reason why the Fishers were not furnished with a copy of the contract, the reason does not now seem material. Mrs. Whetstone, called as a rebuttal witness, testified that defendant had said to her that she had sold the Fishers one acre of ground and did not want the Schmitts to know about it. She further stated that she saw defendant tie the rag on the fence early one morning out of the presence of the Fishers. Defendant denied making the statements attributed to her by Mrs. Whetstone. The surveyor, who was hired to locate the boundaries of the Fisher tract, testified that when he told defendant that a frontage of 120 feet with a depth of 350 feet would not make an acre she inquired of him how much more it would take for an acre. Upon cross-examination, he expressed his impression that defendant intended to sell an acre to the Fishers.

Defendant contends that this is not such clear and convincing evidence as to leave no reasonable doubt as to the mutual intention of the parties. After the previous experi-

ence defendant had had with respect to the Schmitt tract in attempting to plot a one-acre tract which sets on an angle with the public road, it does not seem inconceivable that defendant should quote a somewhat greater frontage to the Fishers. If further proof be needed as to what the parties intended concerning the quantity of land, it is found in the pleadings wherein defendant, by her answer, admitted that the plaintiffs Fisher orally agreed to purchase a tract or lot of one full acre, except that the lot was to have a frontage of 120 feet instead of 130 feet. In view of this admission it cannot be said, as defendant urges, that the chancellor made a new agreement for the parties under color of reforming the one made by them. The decree found that the parties had agreed upon a tract of one acre with a frontage of 130 feet. Again, we are not inclined to hold that the findings of the chancellor confirming the master's report are contrary to the manifest weight of the evidence, and especially so since the master who heard the evidence also had the opportunity to observe the conduct and demeanor of the witnesses while testifying. The record shows that Fisher had but little formal education and was illiterate, except as to numbers, and that Mrs. Fisher had received a sixth grade education. It also shows that their experience with documents containing rather lengthy metes and bounds descriptions was very limited. It appears that the mistake which was made by the parties to this proceeding was in attempting to conform measurements which would produce the requisite square feet to make an acre in a tract of land shaped like a rectangle into a tract in the shape of a parallelogram or rhomboid. That mistake was one of fact, was mutual and was in existence at the time of the execution of the contract for deed. As heretofore pointed out, a tract with 120 feet frontage and with north and south lines intersecting the highway at an angle of 56° 43' would produce

a width of only 100.3 feet. The written instrument did not embody the intended agreement of the parties.

In view of the existing county zoning restriction concerning the erection of a building within fifty feet of a lot line, it was simply a part of doing complete equity in the case for the chancellor to require defendant, as an adjoining property owner, to sign the necessary zoning variance waiver. Were it otherwise, the court would become a party, along with defendant, to perpetrating a fraud upon the plaintiffs Fisher by rendering their land useless for the known purpose for which it was purchased.

Defendant complains that all master's fees and expenses were assessed as costs against her. In the light of all the facts, we find no quarrel with the manner of assessment of costs. Moreover, the question of apportionment of costs, not having been argued by defendant, is not now open to consideration.

Lastly, plaintiffs have submitted a cross error going to the failure of the chancellor to assess the amount of their damages. Plaintiffs have not cross-appealed. They maintain this court should assess damages, conformably to section 92 of the Civil Practice Act. (Ill. Rev. Stat. 1953, chap. 110, par. 216.) In the absence of a cross appeal, plaintiffs are not in a position to seek a review of the adverse disposition of their claim.

The decree of the circuit court of Peoria County is right, and it is affirmed.

*Decree affirmed.*