(No. 34669.—)

J. C. Pulley et al., Appellees, vs. Harold E. Luttrell et al.—(Cecil Luttrell, Appellant.)

*Opinion filed March 20, 1958.*

R. W. Harris, and David A. Warford, both of Marion, for appellant.

D. L. Duty, of Marion, for appellees.

Mr. Chief Justice Davis delivered the opinion of the court:

This is a suit for reformation of a deed. The circuit court of Williamson County entered a decree granting plaintiffs the relief prayed and, a freehold being involved, the defendant Cecil Luttrell appeals directly to this court.

James Carter and Annie Carter, husband and wife, were predecessors in title of both plaintiffs and defendants and originally owned lots 2 and 3 of block 5 of John B. Bainbridge's 3rd Addition to the city of Marion, Illinois. The two lots constituted a tract 85 feet by 209 feet, and the southerly line of lot 2 was the northerly line of lot 3. Each lot measured 85 feet in depth, east and west. Lot 2 was 109 feet, and lot 3, 100 feet in width, north and south.

In March, 1922, the Carters sold the north 100 feet of lot 2. The northerly 50 feet was conveyed to Robert L. Edwards and Mabel Edwards and the 50 feet immediately south of the Edwards tract was deeded to plaintiffs. Title to lot 3 and the southerly 9 feet of lot 2 remained in the Carters. There were no further transfers of title until November 4, 1944, when the Carters, for a consideration of $200, conveyed to the plaintiffs the following described property:

"Commencing Seven (7) feet North of the Southeast corner of Lot Two (2) in Block Five (5) in J. B. Bainbridge's Third Addition to the City of Marion, Illinois, and run North Eighteen (18) feet, West Eighty-Five (85) feet, South Eighteen (18) feet, East Eighty-Five (85) feet to the place of beginning."

This description embraced the northerly two feet of the land retained by the Carters and the southerly 16 feet of the land heretofore deeded to plaintiffs. This deed was not recorded until 1950.

James Carter predeceased Annie Carter, who died in 1950, and on December 8, 1952, Annie Carter's administrator conveyed the south 7 feet of lot 2 and all of lot 3 in John B. Bainbridge's 3rd Addition to Dolph and Ione Holmes by administrator's deed for a consideration of $3,250. On May 29, 1953, the Holmeses conveyed this property to the defendants by quitclaim deed. In 1955, the defendants attempted to place a fence along the north boundary line of their property and about two months later plaintiffs filed this suit wherein they seek to reform the Carter deed of November 4, 1944, to read:

Commencing Nine (9) feet North of the Southeast corner of Lot Two (2) in Block Five (5) in J. B. Bainbridge's Sub-Division of Lot Four (4) in Block Five (5) of J. B. Bainbridge's Third (3rd) Addition to the City of Marion, Illinois, thence run South Eighteen (18) feet; thence West Eighty-Five (85) feet; thence North Eighteen (18) feet; thence East Eighty-Five (85) feet to the place of beginning.

Plaintiffs contend that the Carters intended to sell and they intended to buy an 18-foot strip off the north end of

the Carter tract which would comprise the southerly 9 feet of lot 2 and the northerly 9 feet of lot 3; that this strip was misdescribed due to a mutual mistake of fact; that defendants acquired no better title than that possessed by their predecessors; and that the 1944 deed should be reformed to express the intention of the parties. Defendants urged that there was no mutual mistake of fact sufficient to justify reformation; that plaintiffs were guilty of negligence and *laches;* and that in any event the original deed should not be reformed so as to affect their rights as *bona fide* purchasers.

Defendant Harold E. Luttrell died during the pendency of the action and the case proceeded against the defendant Cecil Luttrell, his wife, as surviving joint tenant. Upon reference to a master, the evidence was substantially uncontroverted. Plaintiffs testified that they intended to buy an 18-foot strip of land from the Carters; that they did not check the description in the deed but placed it in a safe deposit box until it was recorded in 1950; and that they did not immediately take possession of this land since they had an understanding that the Carters could use it for garden purposes as long as they wanted. Harry Peebles, a notary public who prepared the deed, testified on behalf of plaintiffs that he wrote the description in the deed exactly as it was given to him by Annie Carter. Plaintiffs claim to have first known of defendants' claim to the premises in June or July of 1955, when defendants put fence posts along the north line of the southerly 7 feet of lot 2.

Defendant-appellant testified that she and her husband, now deceased, took possession of the property after purchasing it from Dolph and Ione Holmes in May, 1953, and that since then they paid taxes on the entire tract, and kept it raked and mowed. She further testified that the Holmeses made the purchase from the administrator of Annie Carter on behalf of the defendants, and thereafter conveyed to them.

It is well established that courts of equity will reform a deed upon the ground of mistake of fact, mutual and common to the parties, and in existence at the time of execution of the instrument, showing that the parties intended to say a certain thing and, by mistake, expressed another, when satisfactory evidence of mistake is presented, leaving no reasonable doubt as to the mutual intention of the parties. (*Schmitt* v. *Heinz*, 5 Ill.2d 372; *Korosic* v. *Pearson*, 377 Ill. 413; *Way* v. *Roth*, 159 Ill. 162.) However, it is equally well understood that equity will not reform a deed against subsequent *bona fide* purchasers for value, without notice of the mistake or of facts which should put them on inquiry. *Harms* v. *Coryell*, 177 Ill. 496, 504; *Sickmon* v. *Wood*, 69 Ill. 329, 331; 45 Am. Jur. sec. 68, p. 624; 76 C.J.S. sec. 59, p. 409; 31 I.L.P. sec. 12, p. 300; Cf. *Korosic* v. *Pearson*, 337 Ill. 413, 416-417.

We have reviewed the testimony and conclude that the plaintiffs intended to purchase an additional strip of land 18 feet by 85 feet immediately south of the property which they already owned which was 85 feet by 50 feet in size. However, the Carters, original owners of lots 2 and 3, had previously made conveyances to the Edwards' and the plaintiffs of the north 100 feet of lot 2, and were presumably familiar with the dimensions of the lots in question. The plaintiffs and the Carters reduced their agreement to writing in form of deed which is presumed to have expressed their mutual intentions, and such presumption does not yield to any other conclusion unless the evidence is of strong and convincing character. (*Pearce* v. *Osterman*, 343 Ill. 175; *Christ* v. *Rake*, 287 Ill. 619.) The Carters were deceased at the time of the trial and there is no direct evidence of what they intended to sell to the plaintiffs. The scrivener testified that he wrote the description in the deed exactly as it was given to him by Annie Carter. This fact tends to give rise to a reasonable doubt concerning the intent of the Carters to convey to the plaintiff not only the

southerly 9 feet of lot 2, but also the northerly 9 feet of lot 3. Yet we do not regard this point as decisive. If we assume that the facts would justify reformation of the deed as between the original parties, the Carters and the plaintiffs, we must still determine whether the defendants were *bona fide* purchasers for value and without notice of the alleged mistake or any facts which would put them on inquiry.

The record title to the southerly 7 feet of lot 2 and all of lot 3 remained in the Carters until death, after which it was transferred as aforementioned to defendants. The evidence establishes that neither the Carters nor their successors in title ever asserted any right to the northerly 2 feet of the 18-foot strip of land claimed by plaintiffs; and that plaintiffs did not take possession of this 18-foot strip upon delivery of the deed by the Carters in 1944, but rather permitted the Carters to continue to use the 16-foot strip as a garden. The record does not disclose when this use ceased, nor does it indicate any affirmative acts taken by plaintiffs pertaining to this 16-foot strip of land which would put defendants, as prudent persons, on inquiry as to plaintiffs' claim of ownership. (Cf. *Skelly* v. *Ersch,* 305 Ill. 126.) In fact, the only evidence relative to possession of this 16-foot tract is that defendants raked and mowed it from the date of the purchase in 1953. There is nothing in the record to indicate that the price of $3,250, which defendants paid for lot 3 and the southerly 7 feet of lot 2, did not reflect its fair value. Nor does the fact that defendants obtained title through an administrator's deed and a quitclaim deed serve to put them on notice of any pre-existing equity in plaintiffs. There is an absence of proof of any conduct by plaintiffs, or of any knowledge of the allegedly erroneous description on the part of the defendants, which would put defendants on inquiry as to any claim of the plaintiffs in the 16-foot tract of land. Cf. *Barton* v. *Mayers,* 183 Ill. 360, 362-363.

360

We can therefore only conclude from this record that the defendants were *bona fide* purchasers for value, without knowledge of any pre-existing claim of plaintiffs to the land, and without notice of any facts sufficient to put them on inquiry. Accordingly, we believe that the master and chancellor below erred in reforming the original deed. In view of this conclusion, we do not reach the question of whether plaintiffs were guilty of such negligence or *laches* as to defeat their action.

The decree of the trial court is accordingly reversed.

*Decree reversed.*