(No. 35394.—▉▉▉▉▉▉▉▉)

Nels J. Quist *et al.*, Appellees, *vs.* James Streicher *et al.*, Appellants.

*Opinion filed January 22, 1960.*

JAMES P. MOORE, and LAWRENCE PETROSHIUS, both of Waukegan, for appellants.

JOSEPH N. SIKES, of Grays Lake, (FRED H. GEIGER, of counsel.) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendants James and Babe Streicher have appealed directly to this court from a decree of the circuit court of Lake County ordering the reformation of certain instruments, including a deed executed by plaintiffs Nels and Hazel Quist, a deed from Martha Chandler to defendant James Streicher, and a mortgage executed by James Streicher. The issue in this case is whether the circumstances herein warrant the reformation of the instruments on the ground of mutual mistake of fact.

From the record it appears that plaintiffs acquired, by warranty deed dated July 3, 1950, certain property which was legally described as "The West 330 feet of the North East Quarter of the North East Quarter of Section 30, Township 45 North, Range 11, East of the 3rd P.M., in Lake County, Illinois."

In the summer of 1952, plaintiff Quist built two homes on a portion of this property. One was built upon the area described as the south 323 feet of the east 135 feet of plaintiff's tract, and the other was built upon the south 320 feet of the west 195 feet of the tract. In July 1953, plaintiffs sold the house located on the south 323 feet of the east 135 feet of his tract to William A. Chandler (now deceased) and his wife, Martha Chandler, for $15,000. Stakes were placed on the boundaries of this tract, and at the time of the conveyance plaintiffs gave the Chandlers

a survey of the property showing these boundaries. The deed, however, omitted the initial words "the south 323 feet," and described the property as "The East 135 feet of the West 330 feet of the North East Quarter of the North East Quarter of Section 30, Township 45 North, Range 11, East of the 3rd P.M., in Lake County, Illinois."

The alleged mistake was undetected, and the Chandlers occupied only the one acre which they intended to purchase. They set out bushes and flowers at the north end of the property, in the area which separated their portion from that retained by plaintiff Nels Quist, who continued to use the property north of the north line of the Chandler property for producing hay. That is the only use to which this property north of the stakes has been put.

The Chandlers owned the property from 1953 until 1956, when Martha Chandler, after the death of her husband, sold the property to James Streicher for $17,500. The deed dated June 19, 1956, recited the same legal description as appeared in the original deed, and included four acres instead of the one acre which the Chandlers believed they owned.

The evidence is controverted as to whether James Streicher believed that the house he was buying was located on one acre of land. Martha Chandler stated that she took James Streicher and his father all around the premises, and even showed them the boundary stakes in the ground. James Streicher and his father denied they made any such tour of the premises. Streicher claimed that he went to the Chandler house to discuss the purchase of the property; that the discussion took place in the living room, and that he did not see the stakes or even go out on the land. In fact, he testified that he did not know how much land he was buying, except that he was told by Mrs. Chandler that it was over an acre. He added also that he didn't know the significance of "stake marks." However, his loan application, signed by him and filled

out by an official of the Waukegan Savings and Loan Association on the basis of information given by Streicher, described the property as being only one acre. Furthermore, Streicher paid taxes on only one acre of land in 1957, at the time Nels Quist paid taxes on the remaining nine acres in the tract. Streicher claimed that he requested the town collector to change the tax bill, but he could not recall the year in which this request was made.

The record further reveals that at the time of the closing of the deal between Streicher and Mrs. Chandler, she was not represented by counsel, and Streicher was represented by attorney Petroshius, who also represented the loan association. He has continued to act as the Streichers' attorney, and testified as a witness in this case. He stated that there was no discussion of the acreage at the time of the closing, but admitted that he then had before him defendant's loan application describing the property as involving one acre of land. According to his testimony, he commented on the depth of the lot being over 1000 feet, and Mrs. Chandler stated that she didn't know how deep the property was, that her husband handled such matters, and that she was selling Streicher the property she owned. Attorney Petroshius did not advise Mrs. Chandler that the letter of opinion from the title company indicated the lot was over 1300 feet deep. He also stated that as far as the loan association was concerned, it made no difference whether the property included one acre or four acres.

It appears further that, subsequent to the conveyance from Martha Chandler to James Streicher, he married, and defendant Babe Streicher acquired an inchoate right of dower in this property.

The alleged mistake in the legal description did not come to light until June 3, 1957, when plaintiff Quist deeded the adjoining property in the tract to William E. Johnson and his wife. Plaintiff Quist then informed defendant Streicher that his deed mistakenly covered prop-

erty which Quist owned, and Streicher referred plaintiff to his attorney. Plaintiffs thereafter, on June 15, 1957, instituted this proceeding for reformation of the deeds and the mortgage.

The trial court, on the basis of substantially the foregoing evidence, ordered that the deeds and mortgage be reformed on the ground of mutual mistake, and stated that on the basis of the record, defendants should not be entitled to a windfall of three acres of land which James Streicher never intended to buy.

In determining the propriety of that decree, we recognize the obligation of a court of equity to reform a deed to conform to the intention and understanding of the parties, where there is a mutual mistake by the parties as to the amount of land conveyed. (*Dazey* v. *Binkley*, 285 Ill. 513; *Pulley* v. *Luttrell*, 13 Ill.2d 355.) Such mistakes, however, must be established by satisfactory evidence, leaving no reasonable doubt as to the mutual intention of the parties. *Pulley* v. *Luttrell*, 13 Ill.2d 355, 358.

The case law is also replete with statements of the rule that a court of review will not reverse the findings of the chancellor who saw and heard the witnesses, unless it is clear that such findings are palpably contrary to the evidence. *Warner* v. *Gosnell*, 8 Ill.2d 24, 36; *Zubas* v. *White*, 404 Ill. 401.

In reviewing the evidence herein, it appears to be clearly established that at the time plaintiffs Quist conveyed the property to the Chandlers, the parties intended to sell and to buy a house located on just one acre of land. This is evident not only from the testimony of plaintiff Nels Quist and that of Martha Chandler, but from the plat of survey prepared in connection with that conveyance, and from plaintiffs' continued use of the nine remaining acres of this tract and their payment of taxes thereon as shown in the tax receipts in the record. Hence, the legal description in the

original deed was contrary to the intention and understanding of the parties and the result .of a mutual mistake, and the instrument was properly ordered to be reformed.

With reference to the intentions and understanding of the parties as to the property conveyed by Martha Chandler to defendant James Streicher, the evidence establishes that Mrs. Chandler, who was at no time represented by counsel, intended to convey the property which she believed she owned, and over which she, and her husband during his lifetime, exercised dominion. This property consisted of a house situated on a lot bounded by stakes limiting a one-acre area. With respect to Streicher's intention, the evidence is undisputed that his loan application, signed by him and filed after his conversation with Mrs. Chandler at her home, described the property as consisting of one acre. While he claims that Mrs. Chandler told him that the property was more than one acre, at no time did he assert that he believed that he was buying four acres of land as provided in the legal description.

We cannot find legal merit in defendant Streicher's contention that the testimony of Mrs. Chandler that he took defendant James Streicher and his father on a tour of the premises and pointed out the boundary stakes to them was improperly admitted. In fact, in our judgment, it was not unreasonable for the chancellor to give greater credence to that testimony than to James Streicher's denial that he ever went on the land, except in the living room of the Chandler house, and that he didn't even know "how much land there was." We must agree with the trial court, and question the likelihood that a person in James Streicher's circumstances would purchase a house and lot on which he intended to live, without even going upon the land, or knowing whether he was getting one or four acres of property for his money, or where the boundaries of his property were located. The conclusion seems inescapable that

James Streicher originally intended to buy the one-acre tract which Mrs. Chandler intended to sell. This conclusion is further substantiated by the fact that defendant Streicher apparently paid taxes on only one acre of land in 1957,. and by his lack of knowledge as to when and in what year he requested a change in the tax rolls. Under these circumstances, it appears that there was a mutual mistake in the legal description in the deed, and that the instrument should be reformed.

Nor does the testimony of defendant's attorney, Petroshius, necessitate a different result. Although he claims he called Mrs. Chandler's attention to the fact that her lot was deep and extended about 1000 feet, nevertheless, he had before him, at the time of the closing, defendant's loan application which described the property as consisting of one acre. Moreover, he knew that Mrs. Chandler was not represented by counsel, and that she didn't know exactly how many feet were included within the boundaries. Under these circumstances, the attorney should have been put on notice that there might be a discrepancy between the legal description and the property intended to be conveyed and purchased. In any event, neither he nor his client should be permitted to take advantage of the mistake in the legal description.

From our review of the record, it is evident that the conclusions of the chancellor, who saw and heard the witnesses, were substantially supported by the evidence, and could in no way be deemed palpably contrary to the evidence. Hence, the decree of the chancellor should be affirmed.

*Decree affirmed.*