(No. 36527.—

J. C. BERRY *et al.,* Appellants, *vs.* TRUDIE B. LEWIS *et al.,* Appellees.

*Opinion filed November 30, 1961.*

BRADY, DONOVAN & HATCH, of East St. Louis, (VINCENT J. HATCH, of counsel,) for appellants.

COHN & COHN, of East St. Louis, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The dispute in this case has its origin in an alleged error in the description of an improved lot in East St. Louis which was sold at a partition sale in July of 1955. Prior to

the partition suit the present defendants, Trudie B. Lewis and her children, were the owners of lots 18 and 19 in block 2 of Erasmus subdivsion. The two lots adjoined each other. Lot 18, also known as 1809 Lawrence Avenue, was improved with a three-room frame house. Lot 19, also known as 1807 Lawrence Avenue, was improved with a larger, two-family, frame structure, each unit containing three rooms.

The partition suit was filed by Lester Lewis against his mother and his brothers and sisters. It described the property involved as lot 19 in block 2. The case proceeded to a decree and sale. The plaintiffs in the present action were the highest bidders at the sale, and purchased the property for $915. They received a master's deed which conveyed lot 19 in block 2 to them.

In 1958 the plaintiffs commenced the present action by filing their complaint in ejectment to recover possession of lot 19 from the defendants, together with damages for the unlawful withholding of possession. The defendant counterclaimed, alleging that throughout the partition proceedings the property involved was described as lot 19, but that it was the intention of the parties to that proceeding to secure a partition of lot 18. The counterclaim also alleged that although the appointed appraiser described the property as lot 19, he actually appraised lot 18, and that when the plaintiffs purchased at the sale they knew that they were purchasing the property at 1809 Lawrence Avenue, (lot 18), and not the property at 1807 Lawrence Avenue, (lot 19). The counterclaim prayed that "the entire proceedings in the partition suit * * * should be reformed and the reports of the Master in Chancery, the appraisal of the commissioner, the notices and deeds should be corrected to express the true intention of the parties," and further prayed that the court order "the Master in Chancery to convey the proper real estate to plaintiffs by a Master's Deed and will order and direct the plaintiffs to reconvey to defendants the real estate erroneously deeded to them."

Evidence was heard on the complaint and counterclaim, and a decree was entered which dismissed the complaint and granted relief upon the defendants' counterclaim. It found that the plaintiffs had expended $333.17 for taxes and $50 for insurance on lot 19, for which the defendants should make reimbursement. It ordered that upon delivery of "a good and sufficient deed by plaintiffs" conveying lot 19 to the defendants, the defendants should pay plaintiffs $383.17. It did not, however, order the defendants to convey lot 18 to the plaintiffs "by good and sufficient deed." Instead it followed the language of the counterclaim, and ordered the master in chancery to "deliver unto the plaintiffs a deed" conveying lot 18 to the plaintiffs.

Within 30 days after the decree was entered, the plaintiffs filed a motion to vacate it and to grant them the relief prayed in their complaint. This motion, verified by one of the plaintiffs' attorneys, stated that because the defendants had failed to pay the taxes on lot 18, that lot had been sold and a tax deed had been issued on October 27, 1959, to Interstate Bond Co., the purchaser at the tax sale. The motion to vacate was denied, and the plaintiffs have appealed directly to this court from the decree and from the order denying their motion to vacate it. A freehold is involved.

The plaintiffs' first contention is that the defendants' counterclaim amounts to a collateral attack upon the decree in the partition suit, which can succeed only if a lack of jurisdiction over parties or subject matter is established. This contention is disposed of by *Dillard* v. *Jones,* 229 Ill. 119. There, as here, the mistake ran throughout the entire former partition proceeding, and the court said: "We think the great weight of authority is that equity has jurisdiction to correct such mistakes when the proof is clear and the rights of innocent third parties have not intervened, even though the mistake runs through the entire judicial proceedings." (229 Ill. at 126; see 2 Ill. L.R. 407.) In that case it was the purchaser at the partition sale who sought to

correct the proceedings, but that difference would not, we think, be of controlling significance if a mistake in the partition proceedings and a mutual mistake with respect to the sale were established, and no rights of innocent third parties had intervened.

The plaintiffs also contend, however, that the evidence is not sufficient to support the decree, and we agree. The record contains no proof that any mistake whatever occurred in the underlying partition proceeding. The only approach to such evidence appears in the testimony of Trudie Lewis, the mother of the other defendants. She testified that during a conversation with plaintiff J. C. Berry, in the presence of one of her daughters about three weeks before the partition sale, he said that it was too bad "the little house" was being sold for taxes. She replied that it was not a tax matter; that she was trying to "get some help for my children on relief and aid," and they couldn't give it to her "on account of this extra property," and that they told her to get "the little house" sold, use the money for the children, and after it was used they would be glad to help her. Marcella Lewis, the daughter, also testified to this conversation. Her testimony, however, was that the defendant referred "to the house in the paper" and that sale of "the little house" was not discussed at that time. There is no other evidence that even suggests a lack of intention to partition lot 19.

If there was a mistake in the partition proceeding, it was the mistake of the defendants or their agents or attorneys. It is not suggested that the plaintiffs were in any way responsible for such a mistake. If it was intended to partition lot 19, and the plaintiff purchased that lot at the sale mistakenly believing that he was buying lot 18, the parties to the partition suit would have no complaint. No part of the record in the partition suit appears in this case, and there was no attempt to establish how the mistake occurred or by whom it was made. The decree finds that the appraisers ap-

pointed by the court in the partition proceeding appraised lot 18, and that the sale notices described the property as being situated at 1809 Lawrence Avenue. The counterclaim contained these allegations, but they were denied and no proof was offered to support them.

Much of the testimony centered upon the circumstances of the sale, and all of it came from interested parties. There was testimony that the auctioneer stood in front of the house on lot 18, that there was a notice of the sale affixed to that house, and that the auctioneer described the property as 1809 Lawrence Avenue. But sale notices were posted throughout the neighborhood, and there was also testimony that the auctioneer stood between the two houses and that he did not identify the property as 1809 Lawrence Avenue. The auctioneer was not called as a witness.

To reform an ordinary deed upon the ground of mutual mistake, "satisfactory evidence of mistake must be presented, leaving no reasonable doubt as to the mutual intention of the parties, a mere preponderance of the evidence being insufficient." (*Schmitt* v. *Heinz*, 5 Ill.2d 372, 379.) The burden of proof is no less when a decree, as well as a deed, is involved.

We also agree with the plaintiffs that apart from the deficiences in the proof the decree is inequitable. It takes lot 19 from the plaintiffs although the motion to vacate makes it clear that the defendants are unable to convey lot 18 to the plaintiffs. The phraseology of the counterclaim which the decree adopts, suggests that the inability of the defendants to make such a conveyance was known to them when the complaint was filed.

The decree of the circuit court of St. Clair County is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*