MARIE KORSGAARD, Plaintiff-Appellee, v. ROBERT L. ELLIOTT et al., Defendants—(BEVERLY CHANDLER et al., Defendants-Appellants.)

(No. 73-189;

Third District—March 29, 1974.

Bruce Markey, of Chicago Heights, for appellants.

Louis R. Bertani, of Joliet, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This suit for reformation of two deeds was brought in the circuit court of Will County by plaintiff-appellee, Marie Korsgaard, against defendants, Robert and Beverly Elliott and defendants-appellants, Joyce Chandler and her daughter, Beverly. A decree was entered by the court granting plaintiff the relief requested.

In 1960 plaintiff and her now deceased husband owned land in the shape of a trapezoid divided into six lots. The plat of such division was not recorded or accepted by the county and consequently the actual

description of the lots to the extent they were included in contracts and conveyances was by metes and bounds. Two parcels in the center and southerly part of the tract were subsequently sold leaving plaintiff owning land resembling the shape of a horseshoe with the open end to the south. Plaintiff had occupied a dwelling house on lot 6 which was the lot comprising the eastern arm of the horseshoe. In 1960 plaintiff and her husband entered into a written contract to sell lot 6 to defendants, Robert and Beverly Elliott. Although we refer to lot 6, the property was actually described in the contract between the plaintiff and the Elliotts by metes and bounds. Payment was to be made in monthly installments; however, the Elliotts took possession of the lot soon thereafter using the dwelling as their residence. In 1964 the Elliotts decided to sell the land and listed the property with the Gray real estate firm.

Joyce Chandler and her daughter, Beverly, approached the firm with the intention of purchasing property suitable for accommodating and riding a horse owned by Beverly. Mrs. Petterson, an employee of the Gray firm, took the Chandlers to see the land offered for sale by the Elliotts. After viewing the property, a price was agreed upon and earnest money in the amount of $300 was paid to the firm. At the same time the real estate broker and the Chandlers signed a form entitled short form contract and receipt for earnest money, a copy of which was received by the Chandlers. No legal description of the property appeared on this receipt. Several days later a "long form" real estate sale contract was signed by the Chandlers as buyers and by the Elliotts as sellers and a legal description of lot 6 appeared in the contract. The Elliotts had previously received permission from the plaintiff to enter the transaction and the real estate firm ordered a title report from the Chicago Title & Trust Company. The reports when sent out by the title company contained a legal description which included, in addition to lot 6, the remainder of the property owned by plaintiff, including the western arm of the horseshoe. The attorney for the Elliotts prepared two deeds, one for the conveyance from plaintiff to the Elliotts and one for the conveyance from the Elliotts to the Chandlers, both of which were duly executed by the parties at the closing. The attorney used the legal description from the title report because he did not have a copy of the contract for sale at the closing. The Chandlers moved into the house on lot 6. Until the alleged mistake was discovered the horse was boarded in a nearby stable and not on the property constituting the horseshoe; however Beverly, the daughter, used the western arm of the horseshoe to ride her horse. Other persons living in the area also rode horses on the western arm since it was a wooded area.

A year following the conveyance plaintiff was attempting to sell the

remainder of the property in the horseshoe when the mistake in the two deeds was discovered. Because the Chandlers refused at plaintiff's request to agree to a correction of their deed, plaintiff commenced the present suit.

Appellants deny there was a mistake in the deed and maintain they intended to purchase land as described in the deed. At the trial Beverly Chandler (now Castronovo) testified that on the day the property was shown to her and her mother, the real estate agent, Mrs. Petterson, indicated that the wooded area behind the house goes with the house. The witness further testified that the western arm was visible from the house; however, neither she nor her mother went over to the western arm to inspect the area prior to the sale. In a deposition admitted into evidence Beverly Chandler was asked whether she knew what the boundary lines of the property looked like, to which she answered that she did vaguely because "they" traced it in the air with "their" fingers.

On the other hand Petterson testified that she did not represent any property being offered for sale other than lot 6, even though at one point she said additional property was available or could be had at some other time. We note the opinion of the trial court which stated the Chandlers were shown lot 6 on a survey in the Elliott home but we find this contrary to the evidence. Petterson testified she could not remember if she showed it to the Chandlers, and the Chandlers deny they saw it. The Elliotts admit that their interest in the property covered only lot 6 and do not oppose plaintiff's request for reformation of the deeds.

An additional fact argued in support of appellants' position is that they were taxed on the property as described in the deeds. As indicated by the trial court tax bills commonly are based on legal descriptions in deeds and furthermore there was no evidence showing that payment was made with knowledge of the land included or that payment was made before plaintiff's claim was known to appellants.

■■■ On this appeal, appellants' main contention is that the judgment is against the weight of the evidence as a matter of law. A court of equity will reform a deed upon the ground of mistake of fact, mutual and common to the parties and in existence at the time of execution of the instrument showing the parties intended one thing and by mistake expressed another. (*Schmitt v. Heinz*, 5 Ill.2d 372, 125 N.E.2d 457; *Pulley v. Luttrell*, 13 Ill.2d 355, 148 N.E.2d 731.) The mistake must be established by satisfactory evidence leaving no reasonable doubt as to the mutual intention of the parties. *Pulley v. Luttrell*, 13 Ill.2d 355, 148 N.E.2d 731; *Quist v. Streicher*, 18 Ill.2d 376, 164 N.E.2d 44.

■■ We believe the description in the deeds reflects a mutual mistake of fact and the trial court properly reformed the deeds to give effect to

the parties' intentions. Since the parties to the original deed conveying the land from plaintiff to the Elliotts admit the legal description was contrary to their intention and the result of a mutual mistake, it is eviden this deed was properly reformed.

■■ In reference to the intention of the parties to the second deed, conveying land from the Elliotts to the Chandlers, we believe the fact that the parties signed a real estate sale contract with the legal description of lot 6 is of utmost importance. Admittedly the deed did not conform to this contract. This in itself is sufficient to support a conclusion that the mistake was mutual, unless the claim is supported by evidence that the description in the contract was a result of a mutual mistake, which we do not believe is true because there is insufficient evidence to show the Elliotts intended to sell more than they owned. Thus, we do not believe the trial court erred in granting reformation of either of the two deeds.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Judgment affirmed.

SCOTT, P. J., and ALLOY, J., concur.