KENNETH L. SHELOR *et al.*, Plaintiffs-Appellees, *v.* SAMUEL WITT *et al.*, Defendants-Appellees.—(ROY A. COPELAN *et al.*, Defendants-Appellants.)

Third District   No. 78-247

Opinion filed March 6, 1979.

Vilas C. Rice, of Carthage, for appellants.

Richard P. O'Connel, Ltd., of Quincy, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendants Roy A. Copelan and Lawrence R. Bain appeal from an order of the Circuit Court of Hancock County directing them to execute a quitclaim deed to plaintiffs, Kenneth L. Shelor and Leola M. Shelor, of a 7.6-acre tract of land. Plaintiffs Shelors, alleging mutual mistake of fact with respect to conveyance of the property in Hancock County, had instituted an action seeking to have three deeds concerning the property reformed so as to conform to the actual intentions of the parties thereto. Following a jury trial, which ended in a deadlock, the trial court entered its finding and judgment in the chancery action.

The trial court found for the plaintiffs in their action for reformation and ordered defendants Copelan and Bain to quitclaim the disputed acreage to the Shelors within 10 days. On appeal in this court, two issues are raised by the appellants Copelan and Bain: (1) whether the trial court erred in finding that there was a mutual mistake of fact requiring reformation and (2) whether the court erred in finding that Copelan and Bain were not bona fide purchasers for value, without notice.

From the record, it is shown that in 1971, the defendants-appellees Witt owned adjoining tracts of land in Hancock County. These two tracts, referred to as the "North Tract" and the "South Tract," were separated by a public road running east and west. In 1971, the Witts, then the owners, in the person of Lee Witt representing them, negotiated with Dale Ballard (an appellee) for the purchase by him of the "North Tract," that land lying north of the road. Both Lee Witt and Ballard testified that it was their intention and understanding that the land purchased by Ballard was only that lying north of the road. Also, in 1971, Lee Witt negotiated with Kenneth Shelor, a plaintiff, for the purchase by Shelor, of the "South Tract," understood to be the land lying south of the east-west road referred to. Both Witt and Shelor testified that it was their intention and understanding that the land purchased by Shelor was that lying south of and adjoining the road. When the deeds for the conveyances to Ballard and Shelor were drawn up, however, a draftsman's error used the division line between the properties designated as a section line, and not as the roadway, as actually intended by the parties. The road ran along the section line for some distance, but then had a jog in it which deviated from the section line. The result of the use of the inaccurate legal

descriptions, based on the section line, as opposed to the roadway, was that 7½ irregular acres south of the road was unintentionally included in the "North Tract" purchased by Ballard. None of the parties involved noticed the variance between the legal descriptions used in the deed and the actual understanding and intention of the parties. The record discloses that this was the express, uncontested testimony of the parties and that it finds support in the evidence introduced as to use of the properties. Kenneth Shelor, in the remainder of 1971, in 1972, in 1973, and in 1974, farmed the land lying south of the road, the "South Tract" that he had purchased. Included therein were the tillable portions of the 7½ acres which, though south of the road, were subsequently discovered to have been inaccurately and mistakenly described as part of the "North Tract." Dale Ballard, purchaser of the "North Tract," did not farm or otherwise use any of the land south of the road, and believed and understood that it was owned by Shelor.

Thereafter, in February of 1973, Dale Ballard conveyed the "North Tract" which he had purchased from the Witts to Roy Copelan and Lawrence R. Bain, which Ballard said he understood included only the property north of the road. The real estate broker who handled the sale involving the sale to Copelan and Bain, testified that it was the understanding of the parties, that the land sold was that acreage lying north of the road. After the sale of the "North Tract" to Copelan and Bain, the Shelors continued to farm all land south of the road, including the 7½ acres lying south of the road, but inaccurately within the legal description of the "North Tract." This farming use of that land continued for the rest of 1973 and 1974. In 1975, Copelan and Bain erected a fence which limited Shelors' access to the disputed seven and a fraction acres which lay south of the road.

In January of 1975, the Shelors instituted the present action seeking reformation of the 1971 deeds from the Witts to the Shelors and from the Witts to the Ballards, as well as the reformation of the subsequent 1973 deed from the Ballards to Copelan and Bain. At the trial, in addition to the previously mentioned uncontested evidence, there was contradictory evidence on the question of the understanding of Copelan and Bain with respect to the purchase. Copelan, the only one of the two to testify, claimed that he thought he was buying the disputed seven and a fraction acres south of the road. He testified that in 1973 and 1974 he and Bain made some use of a crib and driveway on the disputed acreage and that they mowed weeds every year around the crib. This testimony was expressly contradicted by the testimony of Kenneth Shelor and his son, which was to the effect that no one, except the Shelors, or their employees, utilized or maintained the property. Copelan also acknowledged that in the early spring of 1973, he observed a tenant of the

Shelors, George Acres, plowing the disputed seven acres and, also, admitted that he said nothing to Acres or to Kenneth Shelor. As we have noted, the trial court entered judgment in favor of the Shelors and directed that the conveyances be made to correct the misdescription referred to.

■■ The rules with respect to the reformation of instruments, based upon mistakes of fact, are well settled. As this court said in *Korsgaard v. Elliott* (3d Dist. 1974), 17 Ill. App. 3d 1061, 1063, 309 N.E.2d 263:

> "A court of equity will reform a deed upon the ground of mistake of fact, mutual and common to the parties and in existence at the time of execution of the instrument showing the parties intended one thing and by mistake expressed another. (*Schmitt v. Heinz*, 5 Ill. 2d 372, 125 N.E.2d 457; *Pulley v. Luttrell*, 13 Ill. 2d 355, 148 N.E.2d 731.) The mistake must be established by satisfactory evidence leaving no reasonable doubt as to the mutual intention of the parties. *Pulley v. Luttrell*, 13 Ill. 2d 355, 148 N.E.2d 731; *Quist v. Streicher*, 18 Ill. 2d 376, 164 N.E.2d 44."

In the present case, there is no dispute that the original conveyances of the property from the Witts to the Shelors and from the Witts to the Ballards involved mutual mistakes of fact and that the conveyances were intended to cover property north of the road as to the Ballards and south of the road as to the Shelors. All the parties involved in those conveyances testified that they understood and intended that the land north of the road was conveyed to the Ballards and that the land south of the road was conveyed to the Shelors. As we have noted, however, the deeds as prepared, used a legal description which was inaccurate in describing the property to be conveyed through use of the section line rather than the road, and, actually included, in the misdescription, seven and a fraction acres south of the road in the conveyance to the Ballards. The evidence conclusively established a mutual mistake of fact among all parties to the original conveyances. It is clear that they all intended that the dividing line between the properties would be the east-west roadway. It is obvious, therefore, that the court made no error in the finding that there had been a mutual mistake of fact sufficient to justify reformation. *Korsgaard v. Elliott* (3d Dist. 1974), 17 Ill. App. 3d 1061, 309 N.E.2d 263.

■■ ■ Where a mutual mistake of fact among original parties to conveyances established that there was such mutual mistake of fact, any deed to a subsequent purchaser will also be reformed unless it is established that such purchaser was a *bona fide* purchaser for value without notice of the mistake or of facts which would put him on inquiry. (*Pulley v. Luttrell* (1958), 13 Ill. 2d 355, 358, 148 N.E.2d 731; *Schuline v. Pelzer* (5th Dist. 1971), 2 Ill. App. 3d 791, 794, 276 N.E.2d 832.) In the

*Schuline v. Pelzer* case, the court stated the applicable rules with respect to notice:

> " 'Equity will reform a deed against a subsequent purchaser unless he is an innocent purchaser without notice of the mistake. The rule does not require that he have actual notice. If he has knowledge of such facts as ought to put a prudent man on inquiry as to the title, he is chargeable with notice of all facts to which diligent inquiry and investigation would have led him. *Skelly v. Ersch*, 305 Ill. 126, 131, 137 N.E.2d 106, 108 (1922).' "

It is also established that "[p]ossession is sufficient notice to put a purchaser or mortgagor on inquiry." *Pearce v. Osterman* (1931), 343 Ill. 175, 176-77, 175 N.E. 416; *Schuline v. Pelzer* (5th Dist. 1971), 2 Ill. App. 3d 791, 794-95, 276 N.E.2d 832.

■■■ In the instant case, the evidence establishes that the Shelors took possession of the disputed seven acres in 1971, believing, as did the conveyor, that it was part of the "South Tract" purchased by the Shelors. They farmed the tillable portions of that "South Tract" in 1972, 1973, and 1974. Thus, in February of 1973, when the Ballards sold to Copelan and Bain, the Shelors had been in actual possession of the disputed parcel south of the road, and they continued in possession thereafter for a few years. Copelan himself testified that in the early spring of 1973, he met George Acres, who identified himself as a tenant of the Shelors, when Acres was plowing the disputed acreage. Yet Copelan said nothing to him about the property nor did he contact Shelor about any property line dispute or problem at that time. The Shelors remained in possession of the disputed acreage until 1975, when Copelan and Bain erected a fence to cut off access. While Copelan testified that he and Bain felt that they were buying that acreage in 1973, their subsequent inactivity and silence when faced with Shelors' possession raises an inference that, at the time of the conveyance, they believed that the seven acres was not part of the land purchased, but was land in possession and ownership of the Shelors or someone else. The evidence on this question and on the question of use by Bain and Copelan is contradictory. It is well established, however:

> "* * * that, where the testimony is contradictory, the trial judge as the trier of fact was in a position superior to that of a court of review to observe the conduct of the witnesses, to determine their credibility, to weigh the evidence, and to determine the preponderance thereof. Where * * * the finding of the trial judge is not manifestly against the weight of the evidence, we will not disturb the judgment of the circuit court." [Citation.]" (*Tri-Star Cabinet & Top Co. v. Heatherwood Homes, Inc.* (3d Dist. 1976), 41 Ill. App. 3d 11, 14, 354 N.E.2d 4.)

The findings of the trial court on the evidence referred to are supported in the record, and we do not find that its decision is contrary to the manifest weight of the evidence. The possession shown in this case by the Shelors, which extended from prior to the purchase by Copelan and Bain until well after that purchase, was sufficient notice to put a purchaser on inquiry. (*Pearce v. Osterman* (1931), 343 Ill. 175, 175 N.E.2d 416.) Thus, Copelan and Bain are chargeable with knowledge of the mistake in the original conveyances, a mistake which even a limited inquiry and investigation would have uncovered. There was no error, therefore, in the court's finding that Copelan and Bain had failed to establish that they were *bona fide* purchasers for value, without notice.

A procedural issue was raised by appellants in this court involving an affirmative defense which asserted that Copelan and Bain are *bona fide* purchasers for value without notice. This issue was considered thoroughly and we find no substance to the procedural contention advanced by appellants.

For the reasons stated, therefore, the judgment of the Circuit Court of Hancock County should be and is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.