(No. 32000.—)

CHARLES JONAS *et al.*, Appellees, *vs.* BLANCHE BOYCE MEYERS *et al.*, Appellants.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

Costigan, Wollrab & Yoder, of Bloomington, for appellants.

Chester Thompson, Eugene J. Larkin, and Stone, Stone & Hess, all of Bloomington, for appellees Charles Jonas *et al.;* J. William Meara, and Pratt, Heffernan & Ramseyer, both of Bloomington, for appellee Ralph J. Heffernan, Admr.

Mr. Justice Maxwell delivered the opinion of the court.

This is an appeal from a decree of the circuit court of McLean County reforming a deed made November 23, 1937, by Belle S. Boyce to appellants Blanche Boyce Meyers and Bernice Boyce Greene.

On November 23, 1937, Belle S. Boyce owned the east 59 feet of lots 8 and 9, block 27, Allin, Gridley and Prickett's Addition to the city of Bloomington, which will hereinafter be referred to as the house tract. She also owned an undivided one-half interest in an adjoining piece

of property, which will hereinafter be referred to as the barn tract. The other one-half interest in the barn tract was owned by Blanche Boyce Meyers and Bernice Boyce Greene who were nieces of Belle Boyce. The house tract was improved with a dwelling house and the barn tract with a large brick building used as a garage.

It appears that the parents of the nieces died when the nieces were quite young and that they then went to live with their aunt, Belle Boyce, who reared them.

On November 23, 1937, while she was ill and confined to a hospital, Belle Boyce executed a deed conveying both the house and barn tracts to her two nieces for a recited consideration of one dollar and other valuable considerations. At the same time she executed a will making several specific bequests and leaving all of the remainder of her property to the nieces. Both the deed and will were prepared by Homer English, an attorney, who for some thirty years had been her legal adviser. The deed reserved a life estate to the grantor and was placed of record the following day.

Belle Boyce recovered from her illness and on May 26, 1939, entered into a contract with appellees whereby she sold the house tract to them for $3500, payable in monthly installments, with privilege to pay the entire balance of the purchase price at any time. The record discloses that this was the approximate fair market value of the premises at that time. Homer English, who had prepared the will and the deed to the nieces some 16 months previous, also prepared this contract for Miss Boyce. Appellees paid monthly installments until on or about March 15, 1946. At that time there was a balance due Belle Boyce under the contract in the amount of $2087.97 which was paid in full by appellees. Belle Boyce was staying in Washington with one of her nieces at that time and the final payment was sent to her and she executed a warranty deed to appellees, covering the house tract, which was delivered and

recorded on March 20, 1946. About two years later appellees discovered the 1937 deed to the nieces and immediately requested them to execute quitclaim deeds to the house tract. This they refused to do, and on October 16, 1948, appellees filed their complaint in the circuit court against Belle S. Boyce, Blanche Boyce Meyers and William J. Meyers, her husband, and Bernice Boyce Greene and Raymond Greene, her husband.

The first count of the complaint charged a breach of the covenant of warranty in the deed of March 15, 1946, to appellees and demanded judgment against Belle Boyce for damages.

The second count alleged that there was no consideration for the 1937 deed to the nieces and charged that the nieces and their husbands had knowledge of the fact that appellees were purchasing this tract in fee simple absolute under their contract dated March 26, 1939, and by reason of such knowledge participated in a fraud against appellees and demanded judgment that the 1937 deed be cancelled.

The third count charged a conspiracy between Belle Boyce and the nieces to defraud appellees and demanded that the deed of 1937 be rescinded, or in the event there was no rescission that appellees have a money judgment against the defendants.

On November 15, 1948, Belle S. Boyce, by Homer English, her attorney, filed an answer to the complaint admitting execution of the deeds, but denying any breach of warranty or fraud, and stating that at the time of the execution of the 1937 deed she had intended to convey to the nieces only her undivided interest in the barn tract, and that the house tract was included through an error of the scrivener, and stating that appellees were the owners in fee simple of the house tract. She also filed a counterclaim, in which appellees and the nieces and their husbands were made defendants, stating that on March 15, 1946, she was the owner in fee simple of the house tract and for

a valuable consideration by warranty deed conveyed it to appellees, and that appellees went into possession; that prior to the conveyance to appellees, by arrangement with the nieces on November 23, 1937, she executed a deed to certain adjoining property; that through an error of the scrivener and a mistake of the parties thereto, said deed included the house tract and that it was the intention of the parties to convey to the nieces an undivided one-half interest in the barn tract only. She further alleged that she remained in possession of the house tract, claiming to own the same in fee, until she sold the same to appellees and that her deed to appellees was made with the knowledge and consent of the nieces. She asked that the deed of November 23, 1937, be reformed to exclude therefrom the house tract and that the nieces and their husbands be declared to have no interest therein.

On December 4, 1948, an answer was filed to the original complaint by attorney Shelton B. Leach, purportedly on behalf of Belle S. Boyce and on behalf of the nieces and their husbands. In their brief appellants argue that Homer English had no authority to represent Belle S. Boyce in this action; that the answer and counterclaim filed by him in her behalf are of no effect, and that she was in fact represented by Leach and no one else.

We have carefully examined the record and the evidence on this point. It appears that Homer English had been the attorney for Belle Boyce for thirty years. The nieces themselves testified that she never consulted with anyone except him and that she had implicit confidence in him. His right to represent her was not challenged by any pleading; he was consistently recognized by the lower court and by the master throughout this proceeding as the duly authorized attorney for Belle S. Boyce. Attorney Leach himself stated that he represented the two nieces and that while the nieces had a power of attorney from their aunt, he was personally not interested whether he

represented Belle Boyce or not. The state of the record leaves no doubt that Homer English was duly authorized to represent Belle S. Boyce and did represent her in this proceeding up to the time of her death.

The answer filed by the nieces and their husbands to the original complaint was a general denial of the material allegations in each count and stated that they were the owners in fee simple of the house tract subject to the life estate of Belle S. Boyce and prayed that the complaint be dismissed. They filed no answer or pleading of any kind to the counterclaim of Belle Boyce.

Appellees answered the counterclaim admitting each allegation thereof and admitting that Belle Boyce was entitled to the relief prayed.

The cause was referred to a special master and hearings were begun on March 17, 1949. On the same date Belle S. Boyce died. Later, at the suggestion of her death, the administrator *de bonis non* with will annexed of her estate was substituted as party defendant and counterplaintiff. He adopted the pleadings of Belle S. Boyce as filed in her behalf by Homer English.

On the day that Belle Boyce died Homer English was called as a witness for plaintiffs. He testified that he prepared the deed of November 23, 1937, to the nieces; that he had known these properties all of his life and thought he knew exactly the circumstances with regard to them; that from handling Belle Boyce's affairs and the affairs of the nieces, he knew that Belle owned the house tract, she having received it from her father, and that she and the nieces owned the barn tract, she having received a one-half interest from her father and the nieces having received their one-half interest from their father, who was Belle's brother. He further testified that the nieces informed him that it was their desire and Belle's desire to deed the barn tract to the two nieces, reserving to Belle a life estate, and that one of

the nieces gave him a deed from which to take the description; that this was a very old deed made to Belle's father and her brother jointly, each owning an undivided one-half; that he had never known or been informed that the house tract had ever been owned jointly and that he had always been informed that Belle's father had owned the house tract; that he assumed that the joint deed which one of the nieces gave him did not include the house tract; that the nieces too assumed that the joint deed covered only the barn tract and that he drew the deed accordingly and took it to the hospital along with some other papers and had Belle sign it; that he discussed the matter with Belle at the hospital and that it was her intention to deed only the one-half interest in the barn tract.

The nieces deny that they or either of them were in English's office at the time of, or immediately prior to, the preparation of the deed and deny having given him the old deed or any other instrument from which to take the description and deny having any knowledge of their aunt's intention to make a deed to them or of the execution of the deed until sometime after it had been executed. The evidence is undisputed that no consideration was paid at the time of execution of the deed, but the nieces testified that sometime later each of them gave Belle fifty cents in a joking manner so that the deed would be legal.

The only other evidence in the record which would give any indication of Belle Boyce's intentions at the time of the execution of the deed is the following question and answer in the testimony of Blanche Meyers:

"Q—Then you were not advised that this deed conveying this property had been made to you until the afternoon of the 23rd day of November, 1937?"

"A—Yes, my aunt said Mr. English had been out that morning and she had made her will and he advised her to deed all the property, since she wanted my sister and I to

have it and that she had made them specific bequests in her will, and I never knew anything about the will, what it contained, until recently."

Appellants insist there is further proof of Belle's intention in a statement made by Raymond Greene in his testimony to the effect that about 1940 or '41 or '42 he was present when there was a general discussion about Belle Boyce's health and someone remarked that Belle had told the girls she had deeded all of her real estate over to them, as she was permanently leaving Bloomington. The witness did not state that he heard Belle Boyce make such statement and the testimony does not disclose who made the remark. Under the circumstances, this statement is entitled to no weight.

The evidence established beyond any doubt that immediately after the execution of the purchase contract in 1939 appellees took possession of the premises, paid all taxes and assessments thereafter and made extensive repairs and improvements thereon of a permanent nature and that these improvements were known to the nieces to have been made by appellees, but that the nieces never at any time asserted any rights in the property or gave any notice that they claimed any right therein until just prior to the commencement of this action in 1948 when appellees discovered the nieces' deed of record.

There is also substantial evidence in the record that Bernice Greene had actual knowledge of appellees' purchase contract and the matters contained therein as early as the summer of 1939, but never at any time gave any notice to appellees that she claimed any interest in the property.

Both nieces testified that their aunt was a woman of very high integrity; that she had unusual business acumen and that at the time all of these transactions took place and up to the time of the filing of this suit in October, 1948, she was very alert and most capable of understanding her business affairs.

The master found that title to the house property was vested in the nieces subject to the life estate of Belle Boyce and recommended a judgment against the estate of Belle Boyce for the purchase price and all taxes paid by appellees, plus interest and damages, less the reasonable rental value of the premises from the time appellees went into possession until Belle Boyce's death.

The master further found that the nieces had full knowledge of the purchase contract between Belle and appellees, knew she could not convey merchantable title to the premises and with full knowledge of these facts stood by and permitted appellees to go into possession and in good faith make valuable improvements of a permanent nature; that the nieces should not be permitted to benefit by the improvements made and recommended judgment against the nieces for the value of the improvements plus the increased value of the premises brought about by such improvements, less a reasonable rental from the date of death of Belle Boyce.

Objections to the master's report were filed by all parties. The objections were overruled by the master and permitted to stand as exceptions.

The chancellor sustained the exceptions of appellees and the administrator *de bonis non* with will annexed of of the estate of Belle Boyce; found that it was not the intention of Belle Boyce to include the house tract in the deed to the nieces and that the same was included through an error of the scrivener; that the nieces were not aware of the execution of the deed until a considerable time had elapsed after its execution, and decreed that the deed to the nieces should be reformed by striking therefrom the description of the house tract, and that title to the house tract was fully vested in appellees.

Appellants seek a reversal of the decree on two grounds, (1) that the evidence does not sustain the finding of the chancellor that the house tract was included in the deed

to the nieces through an error of the scrivener, and, (2) that the decree of reformation cannot be sustained because there was no mutual mistake of the parties.

We are of the opinion that the evidence in the record, supported by all of the surrounding circumstances and acts and deeds of the parties, is sufficient to sustain the finding of the chancellor that the house tract was included in the deed to the nieces through an error of the scrivener. The scrivener, Homer English, testified at length and in detail concerning the execution of the deed to the nieces and that it was Belle Boyce's intention that only the barn tract should be included. To this must be added the undisputed fact that Belle Boyce was mentally alert at all times when the transactions in question took place, that she had unusual business acumen, that she was a woman of very high integrity, and that she was most capable of understanding her business affairs; yet, within sixteen months after executing the deed to the nieces, she entered into a contract to convey the house tract to appellees, accepted the full purchase price from appellees, and, in 1946, in accordance with the terms of the contract, executed her warranty deed conveying fee-simple title to them. Certainly, these actions tend to show that she believed she was the owner in fee of the house tract and are inconsistent with any knowledge that she had previously conveyed the house tract to the nieces. These facts lend strong support to the testimony of Homer English. Against this we have only the testimony of Blanche Meyers that her aunt said Mr. English had been out that morning and that she had made her will and that Mr. English had advised her "to deed all the property" to her and her sister. The chancellor interpreted that statement to mean that Mr. English had advised her to deed the barn property to the nieces so they would own it all, the words "the property" referring to the barn property which she held as tenant in common. We are not

constrained to change the interpretation of the chancellor as to the meaning of that statement.

Appellants assail the testimony of Homer English, insisting it is incompetent and should be stricken because he testified to acts and conversations of a deceased party to the suit (Belle Boyce) after the death of Belle Boyce, in violation of section 2 of the Evidence Act. Appellants cite no authorities in support of this contention; Mr. English was not a party to the suit; there was no objection to his testimony on that ground at the time it was given, and the record does not show that Belle Boyce was deceased at the time Mr. English testified. This contention is without merit.

Appellants also insist that the testimony of Homer English was incompetent because he was an attorney in the case and his testimony supported the counterclaim upon which the lower court based its decision.

We have held many times that while it is not proper for an attorney, in a case he is conducting, to testify on his own behalf, he is for that reason not incompetent, and if he chooses to testify he may do so, but his testimony should be given little weight. (*McKey* v. *McKean,* 384 Ill. 112; *Wright* v. *Buchanan,* 287 Ill. 468; *Wetzel* v. *Firebaugh,* 251 Ill. 190.) Homer English was called as a witness by appellees, who were plaintiffs in the action in which he represented a defendant, and, while he could have objected to giving any testimony, he did not choose to do so, and it must be presumed that his testimony was given voluntarily. While he was not, therefore, testifying as a witness for his own client, yet his testimony was given voluntarily and in fact supported the allegations of his client's counterclaim. We cannot sanction such conduct on the part of an attorney and it would have been better had he withdrawn as attorney when it was apparent that Belle Boyce could not testify and that his testimony would

be essential in support of her counterclaim. On the other hand, it must be remembered that Belle Boyce died on the very day that he was called as a witness. If the nieces knew nothing of the preparation of the deed until after its execution, it would appear that, upon the disability and death of Belle Boyce, Homer English was the only person who could testify as to what transpired when the deed was prepared and executed. Under the circumstances, the testimony of Homer English is not incompetent and is entitled to some consideration, and being strongly supported, as it is, by the acts and deeds of Belle Boyce, a person of very high integrity, which acts and deeds were entirely inconsistent with any intention on her part to deed the house tract to the nieces, and in the absence of any definite contradictory evidence in the record, we deem it sufficient to support the finding of the chancellor that the house tract was erroneously included in the deed to the nieces.

This brings us to the question of whether reformation of the deed was proper under the findings made by the chancellor that there was a mistake, but that the nieces had no knowledge of the execution of the deed until some time after it was made.

It is well settled that there must be mutuality of mistake before a deed or other written contract can be reformed. (*Gromer* v. *Molby,* 385 Ill. 283; *Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19; *Tope* v. *Tope,* 370 Ill. 187.) We have also held that if a grantor does not intend to include a portion of a tract in a deed, but the grantee intends that he should, there can be no reformation, as there is no mutual mistake or meeting of the minds. (*Bivens* v. *Kerr,* 268 Ill. 164.) Where the mistake is unilateral and not mutual the deed should be rescinded or cancelled and not reformed. (*Schaefer* v. *Henze,* 337 Ill. 41.) These are well-established general rules in this and other jurisdictions. It would appear that under the general rules thus

laid down the deed to the nieces should be cancelled. Many jurisdictions, however, recognize an exception to the general rule and hold that the donor-grantor of a voluntary conveyance, or his heirs or successors in title, may have reformation as against the grantee, on the ground of mistake and in such case mutuality of mistake is not essential, it being immaterial that the grantee was not cognizant thereof. (45 Am. Jur. 599; *Schreiber* v. *Goldsmith,* 79 N. Y. Supp. 846; *Crockett* v. *Crockett,* 73 Ga. 647; *Ferrell* v. *Ferrell,* 53 W. Va. 515; *Jones* v. *McNealy,* 139 Ala. 379; *Stover* v. *Hill,* 208 Ala. 575.) No Illinois case has come to our attention in which the grantor, or his successor in title has, because of a mistake in the description, sought reformation of a conveyance made as a gift to a volunteer, where such donee had no knowledge of the conveyance at the time of its execution. In the case at bar the chancellor found that the house tract was erroneously included in the deed to the nieces and that the nieces had no knowledge of the conveyance until some time after its execution. Obviously, there could have been no mutuality of mistake in the execution of that instrument. The nieces were the recipients of a gift as mere volunteers, and the grantor, in her counterclaim, alleged the mistake and prayed for reformation of the deed. The pleadings and the evidence supported her claim. We hold that this is a proper case for the application of the exception to the general rule, and that where, as here, a grantor makes a gift by conveyance, erroneously including more land than was intended, and the grantee had no knowledge of such conveyance at the time of its execution and delivery, the grantor will be aided by the court and the deed will be reformed even though the mistake is not mutual.

The decree of the circuit court of McLean County is affirmed.

*Decree affirmed.*