**RUSH PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, Plaintiff,**

**v.**

**SAFECO INSURANCE COMPANY OF AMERICA, et al., Defendants.**

**WINDOWMASTER CORPORATION, a Florida corporation, et al., Plaintiffs,**

**v.**

**MORSE/DIESEL, INC., a Delaware corporation, et al., Defendants.**

Nos. 85 C 8998, 87 C 2854.

United States District Court, N.D. Illinois, E.D.

May 16, 1989.

Jodi L. Kornfeld, Friedman & Koven, Robert J. Rubin, Altheimer & Gray, Chicago, Ill., for plaintiff in No. 85 C 8998.

Scott O. Reed, Richard S. Wisner, Pretzel & Stouffer, Chartered, Chicago, Ill., Warren D. Hamann, Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, Miami, Fla., John A. Jeffries, Robert J. Schuckit, Larry Selander, Keck, Mahin & Cate, Chicago, Ill., for defendants in No. 85 C 8998.

Warren D. Hamann, Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, Miami, Fla., for plaintiffs in No. 87 C 2854.

David M. Meister, Katten, Muchin & Zavis, Chicago, Ill., for defendants in No. 87 C 2854.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In advance of trial a number of parties to this complex dispute over a construction project have filed motions seeking to pare the issues. The court will begin with motions to dismiss claims under Rule 12(b)(6), Fed.R.Civ.P., then advance to the motions for summary judgment under Rule 56. The court will provide facts only when pertinent to resolution of a motion.

*Safeco's Motion to Dismiss*

Safeco Insurance Company of America seeks to dismiss Counts 3 and 5 of the Third Amended Complaint of Windowmaster Corporation and Nathan and Bernice Walberg (hereinafter "Windowmaster"). Safeco provided a surety bond on behalf of Windowmaster Corporation which ran in favor of Morse/Diesel, Inc. This bond covered Windowmaster's subcontract work on construction of a new hospital wing at Rush Presbyterian St. Luke's Medical Center. Safeco issued its bond in return for premiums and an indemnification agreement from Windowmaster.

In Count 3 Windowmaster contends that Safeco breached the indemnity agreement by failing to raise Windowmaster's defenses against Morse/Diesel when the latter declared a default and made a claim under the bond.[1] Windowmaster asserts that this failure amounted to a breach of Safeco's contractual duty of good faith. This court discussed this duty under Illinois law in an earlier opinion. See *Windowmaster Corporation v. Morse/Diesel, Inc.*, 1988 WL 142211, 1988 U.S.Dist. LEXIS 14921 (N.D.Ill. Dec. 29, 1988). Safeco claims, however, that Count 3 fails to allege a cause of action consistent with the theory outlined in that earlier opinion. Safeco argues that, according to the decisions rendered in *Hartford Acc. and Indem. Co. v. Millis Roofing*, 11 Mass.App. 998, 418 N.E.2d 645 (1981), and *Elmore v. Morrison Assur. Co., Inc.*, 502 So.2d 378 (Ala.1987), Windowmaster can claim a breach of the duty of good faith only if it alleges dishonest or spiteful purposes, conscious doing of a wrong, or self-interested motives on the part of Safeco.

While Safeco may have characterized the law of Massachusetts and Alabama accurately, such is not the law of Illinois, which this court (as noted in its earlier opinion) applies to the dispute over the indemnity agreement. As the appellate court held in *Cernocky v. Indemnity Ins. Co. of N. America*, 69 Ill.App.2d 196, 205, 216 N.E. 2d 198, 203 (1966), "negligence or bad faith is the Illinois standard of conduct to be applied to the facts in determining whether the insurer"—and, as noted in this court's earlier opinion, a surety—"is liable beyond

---

1. Safeco originally challenged Count 3 on grounds that it did not state a cause of action for fraud and misrepresentation under Illinois law. One could have read Count 3 of the Second Amended Complaint as alleging two different causes of action, and for this reason Windowmaster agreed to separate its fraud claims from its contract claim through the Third Amended Complaint. Windowmaster now insists that Count 3 of the Third Amended Complaint is solely for breach of contract, while Count 5 is its claim for the tort of fraud and misrepresentation. This court will hold Windowmaster to its representations, and discuss the sufficiency of Windowmaster's claims of fraud only in reference to Count 5.

the policy limits for failing to settle the case. The 'fraud' standard is not required." The *Cernocky* court was clear that negligence and bad faith are synonymous in this context. "[T]he words 'good faith' and 'bad faith' are not particular words of art as used here. They mean either being faithful or unfaithful to the duty or obligation that is owed." *Id.* at 205–06, 216 N.E.2d 198.

Illinois thus requires only a showing of negligence in actions alleging the breach of a surety's duty of good faith toward its insured, where the insured is obligated to indemnify the surety. Even if Illinois were to adopt the standard suggested by Safeco, however, Count 3 would still survive Safeco's motion to dismiss. In ¶¶ 29–31 of the Third Amended Complaint, Windowmaster alleges that Safeco knew Windowmaster had performed properly under its subcontract with Morse/Diesel, despite Morse/Diesel's declaration to the contrary. Nevertheless, Safeco proceeded to assume Windowmaster's duties toward Morse/Diesel and agreed to complete the Rush project—a decision which Windowmaster claims was unnecessary, costly, and one taken in derogation of Windowmaster's rights under its indemnity contract with Safeco. Windowmaster also claims that Safeco made knowing misrepresentations in order to obtain Windowmaster's cooperation in its scheme. *Id.* at ¶ 45. This court thus denies Safeco's motion to dismiss Windowmaster's Count 3.

Safeco's attack on Windowmaster's Count 5 is more successful. In Count 5, Windowmaster claims that Safeco committed the Illinois tort of fraud and misrepresentation. Under Illinois law, a plaintiff claiming this tort must allege that (1) the defendant made a false statement of material fact, as opposed to a statement of opinion; (2) the defendant knew or believed the statement to be false; (3) the plaintiff reasonably believed in and relied upon the statement; (4) the defendant made the statement for the purpose of inducing the plaintiff to act; and (5) the plaintiff's reliance on the statement caused him damage. See *Glazewski v. Coronet Insurance*

*Co.,* 108 Ill.2d 243, 249, 91 Ill.Dec. 628, 631, 483 N.E.2d 1263, 1266 (1985); *Richmond v. Blair,* 142 Ill.App.3d 251, 255, 94 Ill.Dec. 564, 567, 488 N.E.2d 563, 566 (1985).

In its Third Amended Complaint, Windowmaster alleges that Safeco represented to Windowmaster that it had "fully analyzed" the status of the Rush project, Morse/Diesel's allegations against Windowmaster, and Windowmaster's allegations against Morse/Diesel prior to entering into a July 16, 1981 agreement with Morse/Diesel to remedy Windowmaster's alleged default. See Third Amended Complaint at ¶¶ 42–44. Safeco argues that its declaration that it had "fully analyzed" these matters was a statement of opinion, not fact. The distinction in Illinois law between facts and opinions is quite metaphysical, but it is not totally lacking in practicality. The court in *Oltmer v. Zamora,* 94 Ill.App.3d 651, 653–54, 49 Ill.Dec. 652, 654, 418 N.E.2d 506, 508 (1981), relied on a portion of the Restatement (Second) of Torts § 539 (1965) to guide it in its consideration of the distinction:

> (1) A statement of opinion as to facts not disclosed and not otherwise known to the recipient may, if it is reasonable to do so, be interpreted by him as an implied statement
>> (a) that the facts known to the maker are not incompatible with his opinion; or
>> (b) that he knows facts sufficient to justify him in forming it.
> (2) In determining whether a statement of opinion may reasonably be so interpreted, the recipient's belief as to whether the maker has an adverse interest is important.

Taking the allegations of the Third Amended Complaint in light of this analysis, the court concludes for purposes of this motion that ¶¶ 42–44 could be statements of fact, or at least are statements that could imply facts. A statement that one has "fully analyzed" a problem could be an opinion as to the amount of effort expended in analysis. It could also imply, however, that the declarant has not discovered facts which would preclude one from be-

lieving that such analysis was full. The latter interpretation could obtain in this dispute. Moreover, Windowmaster had no reason to suspect that Safeco's interests were adverse to its own, especially in light of Safeco's duty under Illinois law to make Windowmaster's interests paramount. See *Windowmaster*, Mem.Op. at 6–7. This makes the possibility that facts are imbedded in Safeco's representation even greater. See *Oltmer*, 94 Ill.App.3d at 655, 49 Ill.Dec. 652, 418 N.E.2d 506 (undisclosed adverse interest can turn advice into a statement of fact for purposes of the tort of misrepresentation).

█ The court thus concludes that Windowmaster has alleged the first element of the Illinois tort of misrepresentation sufficiently. Windowmaster alleges further that Safeco knew that its misrepresentations were false, that Windowmaster relied on these representations in the reasonable belief that they were true, and that Safeco made them in order to induce Windowmaster to cooperate with Safeco pursuant to the July 16, 1981 letter agreement. See Third Amended Complaint, ¶¶ 45–47. Nevertheless, Windowmaster has failed to allege the fifth element of the tort. That element is injury resulting from the induced conduct. Windowmaster attempts to allege five harms stemming from its decision to cooperate with Safeco pursuant to the July 16 letter agreement. Windowmaster states:

> As a result of the described ... misrepresentations Windowmaster and the Walbergs have suffered or will suffer damages which include but are not limited to the following:
>
> a. A sum in excess of $400,000.00 for sums due it under its subcontract for work substantially completed by Windowmaster.
>
> b. A sum in excess of $100,000.00 expended by Safeco and claimed by it against [Windowmaster] for moneys expended by it in the completion of the [Rush project].
>
> c. A sum in excess of $100,000.00 for delay caused by Morse/Diesel as a result

of their breaches and the improper declaration of a default.

> d. Lost profits on the [Rush project] in a sum in excess of $100,000.00.
>
> e. Damages to business reputation and profits from inability to obtain future sub-contract work and bonding in a sum in excess of $500,000.

*Id.* at ¶ 48.

In testing the allegations of a complaint in response to a motion to dismiss, the court need not accept every allegation as true. The court may disregard unsupported conclusions, unwarranted inferences, or allegations that are at odds with other allegations in the complaint. See generally Charles Alan Wright and Arthur R. Miller, 5 Federal Practice and Procedure § 1357 (1969). Windowmaster's allegations of damage in ¶ 48 suffer from many of these problems. Windowmaster alleges in ¶ 15 that it entered into a subcontract with Morse/Diesel for work on the Rush project on June 25, 1979. Windowmaster alleges nothing else that would support a reasonable inference as to how Safeco's misrepresentations in 1981 resulted in Morse/Diesel's failure to pay sums owing under the 1979 subcontract. As for the second alleged harm, Windowmaster fails to allege anything that would lead this court to infer how the filing of a claim for $100,000 is injurious. If a claim is meritorious, the party owing it may not assert injury; if a claim has no merit, no sum need be paid, and injury is avoided.

The other alleged harms reflect imagination, but likewise do not qualify as detriments resulting from Safeco's misrepresentations. The cause of harm in ¶ 48(c), by the very words of ¶ 48(c), is Morse/Diesel's. The lost profits claimed under ¶ 48(d) logically stem from Windowmaster's subcontract, which as noted above was signed two years prior to Safeco's alleged misrepresentations. How these misrepresentations caused Windowmaster to lose profits on this subcontract is neither clear nor reasonably inferred. The closest Windowmaster comes to alleging a harm from Safeco's misrepresentations is in ¶ 48(e), where Windowmaster claims it can-

not get work or bonding. It would not be surprising if Safeco, Rush, or Morse/Diesel's animosity towards Windowmaster resulted in harm to Windowmaster's reputation in the construction industry. But the touchstone of tort law generally, and the detriment element of the Illinois tort of misrepresentation in particular, is causation. How Windowmaster's cooperation with Safeco pursuant to the July 16 letter agreement—cooperation that was full and substantial, see ¶ 22—resulted in its getting no work in the industry is not reasonably gathered. The lack of a link between Windowmaster's cooperation and its present inability to find work may explain why Windowmaster has not sought compensatory damages from Safeco for the five harms asserted in Count 5, but instead seeks punitive damages only.

Because Windowmaster has failed to allege a detriment resulting from Safeco's alleged misrepresentations, it has not stated a claim for misrepresentation under Illinois law. For this reason, the court dismisses Count 5 of Windowmaster's Third Amended Complaint under Rule 12(b)(6), Fed.R.Civ.P.

*Morse/Diesel's Motion for Summary Judgment*

The court now turns to Morse/Diesel's motion for summary judgment on a portion of Count 1 of Safeco's cross-claim. There Safeco alleges that Morse/Diesel is liable for $1,177,341.88 paid to Windowmaster for work in progress and materials at the time Morse/Diesel declared Windowmaster in default and terminated its construction subcontract. The gravamen of Safeco's overpayment claim is had Morse/Diesel been more diligent in scrutinizing Windowmaster's requests for payment, Rush would not have paid Windowmaster amounts that were not due, which allegedly prejudiced Safeco's position as surety for the project.

Morse/Diesel's motion turns on who did bear responsibility for supervising payments to Windowmaster—or more importantly, who did not. It is undisputed that Rush entered into a written Construction Agreement with Morse/Diesel for con-struction of the new hospital wing. According to Article 15 of the General Conditions of the Agreement, a contractor who desired work-in-progress payments or payments for materials had to apply to either the "Owner"—named under the General Conditions as Rush and "its designated representatives, successors and assigns" in Article 1.A—or the "Owner's Representative," who was Schal Associates. In certain cases Schal could submit payment applications to Hansen Lind/Meyer Solomon Cordwell Buenz, Rush's architect on the project. Once approved, payments were the responsibility of Rush or Schal.

Windowmaster was a subcontractor on the Rush project. Windowmaster's subcontract with Morse/Diesel incorporated the General Conditions of the Rush Construction Agreement. According to the subcontract, "Payment to [Windowmaster] shall be made either directly from the Owner"—again defined under the subcontract as Rush—"or otherwise only from funds [Morse/Diesel] has received from the Owner for payment to [Windowmaster] for this purpose." The subcontract provided further: "Payments, less retentions, shall be made in accordance with the procedure as set forth in the Owner's General Conditions."

From the documents submitted to the court it is apparent that the General Conditions are the major source of obligations relating to payments. Under the General Conditions, only Rush, Schal, and Rush's architect bore any measure of contractual responsibility for overseeing payments. No clause in the General Conditions obligates Morse/Diesel to screen or otherwise approve of payments to subcontractors like Windowmaster. Windowmaster's subcontract for its part places only one duty on Morse/Diesel with respect to payment: it must forward moneys received from Rush for the account of Windowmaster to Windowmaster.

■ Safeco contends that the General Conditions obligated Morse/Diesel to screen payment applications because the subcontract incorporated the General Conditions, and thus whatever Rush and Schal

had to do under the general contract, Morse/Diesel had to do on its subcontracts. Safeco also claims that on numerous occasions Morse/Diesel made recommendations on Windowmaster's payment requests. Regardless of what extrinsic facts Safeco can bring to bear, however, this court must ignore them when faced with unambiguous promises. See *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir.1988) (construing Illinois law—court's sole responsibility when faced with unambiguous contract is to declare its meaning). The contracts before the court are unambiguous on the issue of who bears responsibility for screening payments. The General Conditions indeed incorporate subcontracts when subcontracts are in view, but nothing in the General Conditions transposes Rush or Schal's responsibility under the Contract to Morse/Diesel in the event of a subcontract. As for the Windowmaster subcontract, it explicitly states that payments are to be made in accordance with the procedures set forth in the General Conditions. This explicit language defeats any suggestion by Safeco that this court must impose additional duties on Morse/Diesel—particularly when the claimed duty arises not from disputed language, but from sheer analogy.

For these reasons, Morse/Diesel is entitled to summary judgment on Safeco's cross-claim of liability for overpayments made to Windowmaster.

*Safeco's Motion for Summary Judgment*

Safeco lastly seeks summary judgment on Count 2 of the Amended Complaint of Rush Presbyterian St. Luke's Medical Center. In that count Rush seeks equitable reformation of Safeco's bond for Windowmaster on grounds of mutual mistake. The Windowmaster bond nominally ran in favor of Morse/Diesel, Inc.; Safeco has admitted that it should have run in favor of Morse/Diesel of Illinois, Inc., and Rush wants to stretch the bond even further to cover itself.

The first bridge which the court must cross is the law which governs Rush's claim. In earlier proceedings in this case before Judge Frank J. McGarr, the court dismissed Rush's claim for recovery on Safeco's bond, stating that Rush could not enforce rights on a bond which expressly limited the right of action to Morse/Diesel alone. The Seventh Circuit affirmed this decision. The court reached its conclusion after noting that neither Rush nor Safeco had raised the issue of the proper governing law in either the district court or the court of appeals. The court thus held that the parties had stipulated to the application of Illinois law. See *Rush Presbyterian St. Luke's Med. C. v. Safeco Ins. Co.*, 825 F.2d 1204, 1205–07 (7th Cir.1987).

This time around Safeco was not sure that it wished to make the same stipulation. It thus brought Illinois and Florida law to the court's attention, never taking a position as to which applies. Safeco could have taken Rush's offer to stipulate to Illinois law, but hedging its bet, Safeco leaves it to the court to decide which law is proper.

The federal courts are obliged to rely on the conflict-of-law principles of the forum state in deciding the governing law in diversity cases. See *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 495–96, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The most recent Seventh Circuit interpretation of Illinois choice of law rules in contract suits is set forth in *Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1106–10 (7th Cir.1987). There the court noted that the Illinois courts were moving toward the "most significant contacts" rule of the Restatement (Second) of Conflict of Laws § 188 (1971) (hereinafter "Restatement"). The court in *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1079, 125 Ill.Dec. 585, 592, 530 N.E.2d 994, 1001 (1988), announced what the Seventh Circuit predicted, and listed these factors which the court must consider in determining which state has the most significant relationship to a contract claim: the place of negotiation, the place of contract execution, the place of performance, the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of business of the parties.

From these elements it appears that three states have relationships to this case:

Florida, Illinois, and Washington. Florida is where Windowmaster requested and was given the bond. Illinois is where the bond was to be performed, for if Windowmaster defaulted, payment was to go to Morse/Diesel Inc. of Illinois.[2] The subject matter of the bond also was in Illinois. The domiciles, residences, and places of incorporation and business of the parties to the bond are Washington (Safeco) and Florida (Windowmaster).

Deciding which state has the most significant relationship to Rush's claim involves more than totalling numbers of contacts. The Restatement urges courts to evaluate these contacts "according to their relative importance with respect to the particular issue." Restatement § 188(2). Even § 193 of the Restatement, which suggests that the law of the location of the insured risk governs surety contracts, only goes so far:

> The validity of a contract of ... surety ... insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

This suggests that while in most instances Illinois has a paramount relationship to Windowmaster's bond, on particular issues other states may have a greater interest. Section 193 refers to Restatement § 6, which urges courts to consider a number of factors in determining which state has the greatest interest with respect to particular issues. Among these factors are the relevant policies of the forum, the relevant policies of other interested states, the relative interests of the other states in the determination of the particular issue, and the protection of justified expectations.

■ Rush is the only party which has suggested that any state has a particular

interest here. Not surprisingly, Rush argues that Illinois, the forum state, has an interest in applying its own law to disputes arising out of Illinois construction projects. Rush offers no authority for this proposition, and it seems contrary to the Illinois cases which suggest that in contract actions, Illinois prefers the interests of the state with the most significant contacts, whatever state that is. The court need not dwell on this further, however: Safeco has not alerted the court to any interest of any other state in this matter in any of its briefs. Thus, by virtue of Restatement § 193 and default, this court will apply Illinois law to this dispute.

Under Illinois law, a party seeking reformation of a written contract on the basis of mutual mistake must show by clear and convincing evidence that, first, "there has been a meeting of the minds resulting in an actual agreement between the parties." *LaSalle National Bank v. Kissane*, 163 Ill.App.3d 534, 540–41, 114 Ill.Dec. 635, 638, 516 N.E.2d 790, 793 (1987). Once this is demonstrated, the party must show further that there is a mistake which was present in the document from the time of its execution, that the mistake was "mutual and common to all parties," and that "the parties intended to say one thing but the instrument express[es] another." *Beynon Bldg. Corp. v. Nat'l Guar. Life Ins.*, 118 Ill.App.3d 754, 760, 74 Ill.Dec. 216, 220, 455 N.E.2d 246, 250 (1983); see also *Kissane*, 163 Ill.App.3d at 541, 114 Ill.Dec. 635, 516 N.E.2d 790. Safeco argues that Rush lacks proof of any of these propositions.

■ Rush submits evidence that presents genuine issues of material fact on the latter elements of its claim. This evidence includes Safeco's actions subsequent to the declaration of Windowmaster's default and internal Safeco memoranda which reflect a belief of some of Safeco's employees that Rush was an obligee on Windowmaster's bond. Such after-the-fact evidence can establish mutual mistake at the moment of

---

2. The named obligee, Morse/Diesel, Inc., was a Delaware corporation with its principal place of business in either Illinois or New York. Safeco has admitted that there was a mistake in the

naming of the obligee, however, and that it should be Morse/Diesel, Inc. of Illinois, an Illinois corporation whose principal place of business is Illinois.

execution of a contract under Illinois law. See, for example, *Schmitt v. Heinz*, 5 Ill.2d 372, 125 N.E.2d 457 (1955) (defendant's assistance in building a fence for plaintiff after conveying land to plaintiff evidence of mistake in document of conveyance); *Jonas v. Meyers*, 410 Ill. 213, 101 N.E.2d 509 (1951) (grantee's knowledge of grantor's sale of property to third party evidence that previously executed bequest of property from grantor to grantee was in error); *Harden v. Desideri*, 20 Ill.App.3d 590, 315 N.E.2d 235 (1974) (defendant's acknowledgement of duty not contained in previously executed contract evidence that contract contained drafting error).

Rush's obligation on a motion for summary judgment is to indicate genuine issues of material fact not on some issues on which it has the burden of proof, but on all such issues. Rush's proofs neglect the first and foremost element of a claim for reformation: a meeting of the minds resulting in actual agreement among the parties. Rush's position in this respect differs from that of the plaintiffs in *Schmitt, Jonas,* and *Harden.* In each of those cases the parties had a meeting of the minds on something, even though they differed over what that something was. In *Schmitt*, the defendant agreed to sell the plaintiff land; they quarrelled over the boundaries of the parcel sold. In *Jonas*, it was undisputed that the aunt of the defendants intended to convey some land to the defendants, but through the error of the aunt's attorney the deed to the defendants included an extra unintended tract. In *Harden,* the parties executed a lease; it contained an error only as to the designation of one of the parties.

Here Rush has not produced evidence of any agreement with Safeco on anything. Part of the reason for this is the position which Rush has with respect to the allegedly erroneous contract. Unlike the plaintiffs and defendants in *Schmitt* and *Harden,* Rush is not one of the contracting parties. The contracting parties here are Safeco and Windowmaster; if Rush had gotten its way it would have been, at best, a third-party beneficiary of Windowmaster's bond contract. *Jonas* demonstrates,

of course, that one need not be a contracting party to seek reformation of a contract, for in *Jonas* it was the buyers of the erroneously deeded tract who sought reformation of the deed, to void the deed of the parcel which they had purchased. Nevertheless, the *Jonas* plaintiffs were able to overcome the challenge of proving the intentions of the parties despite not being intimately involved by introducing the testimony of the attorney who drafted the erroneous deed. This person had direct knowledge of the grantor's intentions. See *Jonas,* 410 Ill. at 215–16, 218–19, 101 N.E.2d 509.

By contrast, Rush provides no evidence that Windowmaster and Safeco agreed to make Rush an obligee on Windowmaster's bond. Rush wanted to be covered, certainly. It so wanted coverage that it promised Windowmaster in its subcontract to pay for it. Windowmaster in turn was under a contractual obligation to secure a bond satisfactory to Rush upon Rush's request. The only evidence that Rush has submitted as to what Windowmaster actually requested, however, is a letter from Nathan Walberg on behalf of Windowmaster Corporation to Duff Matson, Safeco's agent. The letter states:

Re: Morse/Diesel, Inc. GC
Project: Rush–Presbyterian–St. Luke's Medical Center

\* \* \* \* \* \*

Gentlemen:

Enclosed please find copy of contract on above Project.

Please issue Bond to cover, accordingly.

Also, please issue Certificates of Insurance to cover, accordingly.

Forward all to us for sending to Morse/Diesel.

Rush has submitted evidence that Matson communicated this request to Joel Dolph, a Safeco representative in Orlando, Florida. Dolph gave the information to Jim Damaino, an employee in Safeco's Regional Office in Atlanta, Georgia. Damaino prepared an order for a bond that named Windowmaster as contractor and Morse/Diesel, Inc. as

sole obligee. Damaino passed this order to Scott Hull, who approved underwriting the bond. No one in this chain looked at the Windowmaster subcontract before underwriting the bond. Had they, it now appears that someone could have realized that a bond in favor of Morse/Diesel was not needed, as Rush held Morse/Diesel harmless for Windowmaster's actions.

Rush may be correct that somewhere a mistake occurred. Perhaps Rush did not instruct Windowmaster adequately as to the bond it wanted. Perhaps Rush communicated its desire to Windowmaster, but Windowmaster failed to put through Rush's exact request to Safeco. These mistakes do not give rise to an action for reformation on the basis of mutual mistake, however. To the contrary, mistakes like these destroy the prospects for reformation, as they betray the absence of a meeting of the minds over the terms of the parties' contract. Without an agreement, reformation of a document to reflect an agreement is impossible. For these reasons Safeco is entitled to summary judgment on Count 2 of Rush's Amended Complaint.

### CONCLUSION

The court dismisses Count 5 of Windowmaster's Third Amended Complaint in case 87 C 2854 under Rule 12(b)(6), Fed.R.Civ.P., with prejudice. The court grants Morse/Diesel summary judgment under Rule 56 on Safeco's overpayment claims, as contained in Count 1 of Safeco's cross-claim in case 87 C 2854. The court further grants Safeco summary judgment on Count 2 of the Amended Complaint of Rush in case 85 C 8998. All other motions are denied.